UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                    Case No. 8:14-CR-521-T-27AEP

EDWARD NEIL FELDMAN
and KIM XUAN FELDMAN
_____/

### ORDER

**BEFORE THE COURT** is Defendant Kim Xuan Feldman's Rule 29 Motion for Judgment of Aquittal [sic] or, in the Alternative, Rule 33 Motion for New Trial (Dkt. 296) and the Government's opposition (Dkt. 304). Upon consideration, Defendant's motion is DENIED.

### Rule 29 Motion for Judgment of Acquittal

A "judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" may be granted under Fed.R.Crim.P. 29(a). *United States v. Williams*, 291 Fed. App'x 288, 289 (11th Cir. 2008). However, a conviction will be upheld if "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *United States v. Hunt*, 187 F.3d 1269, 1270 (11th Cir.1999) (emphasis in original).

After the Government rested, Defendant moved under Rule 29 for a judgment of acquittal on each count in which she was charged.[1] Her motion was denied, based on a finding that the evidence was sufficient for a reasonable jury to find Defendant guilty beyond a reasonable doubt. Her renewed motion at the conclusion of the case was likewise denied. The jury returned guilty verdicts an all counts.

---

[1] Defendant was charged in Count One with conspiracy to distribute and dispense controlled substances, in Count Five with conspiracy to engage in financial transactions involving proceeds from a specified unlawful activity, that is, conspiracy to distribute and dispense controlled substances, and in Counts Six, Seven and Eight with engaging in monetary transactions with proceeds derived from specified unlawful activity, that is, conspiracy to distribute and dispense controlled substances.

Defendant maintains there was insufficient evidence to prove that she knowingly participated in the drug distribution and dispensing conspiracy charged in Count One. For the same reasons her Rule 29 motion was denied, her renewed Rule 29 motion is denied. A reasonable jury could find, beyond a reasonable doubt, that Defendant knowingly participated in the conspiracy charged in Count One.

The Government accurately summarizes the trial testimony, which demonstrates ample evidence from which the jury could find beyond a reasonable doubt that Edward Feldman prescribed controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice (Dkt. 304, p. 10-12). And while not overwhelming, there was sufficient, that is, substantial evidence, from which the jury could find, based on reasonable inferences, that Kim Feldman knew that Edward Feldman was prescribing controlled substances other than for legitimate medical purposes and not in the usual course of professional practice and knowingly participated in that conduct, thereby conspiring with him.

For example, and not by way of limitation, there was testimony that she was involved in scheduling patients, writing prescriptions while Dr. Feldman ate lunch, referred patients who had been discharged by other physicians to her husband, instructed staff not to discharge patients because there were too many patient discharges which resulted in loss of revenue, and instructed staff to stop performing PDMPs and urine screens. She, along with her husband, voiced concerns about the presence of law enforcement at the clinic and parked behind the office to avoid the officers. She instructed staff to watch for undercover officers wearing baseball caps and sunglasses posing as patients and to place sticky notes on the files of patients suspected of being undercover agents. The Government introduced the patient file of undercover agent Kissel, on which a sticky note was

placed, stating: "possible agent, review chart, keep meds low." And Aimee Martin described a conversation she had with both Defendants about "staying under the radar" of law enforcement. Finally, the evidence demonstrated that Defendant was so concerned that Edward Feldman would be arrested that she started placing assets in her name. And the evidence showed that she made numerous transfers of money ($93,000 total) derived from the clinics to various accounts in Canada. (See Gov't Exhibit # 4004).

Since the evidence demonstrated beyond a reasonable doubt that Defendant was a knowing participant in the conspiracy charged in Count One, it follows that the evidence was sufficient to support her convictions on Counts Five, Six, Seven and Eight. The evidence described an all cash pain clinic. By most accounts, Kim Feldman ran the business end of the clinic, handled all of the cash, and made all of the deposits. The evidence demonstrated structured deposits, and a reasonable jury could infer that those deposits were intended to avoid currency transaction reporting requirements ("CTRs").

To the extent Defendant challenges the credibility of various clinic employees who testified for the Government, credibility determinations "fall within the exclusive province of the jury and may not be revisited unless the testimony 'is incredible as a matter of law.'" *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997). Testimony deemed incredible as a matter of law is such that it is "unbelievable on its face" offering "facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" *United States v. Williams*, 291 Fed. App'x at 290, quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985). Defendant makes no showing that the testimony of any of the Government's witnesses was incredible as a matter of law.

3

While the evidence in some respects, as Defendant urges, could support inferences consistent with a hypothesis of innocence, "[t]he evidence need not be inconsistent with every reasonable hypothesis other than guilt." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). The jury is allowed "to choose among the several reasonable conclusions to be drawn from the evidence." *Id.* And that the Government's case may have relied largely on circumstantial evidence, as Defendant contends, does not render the evidence any less sufficient. In proving a conspiracy, "it is frequently necessary to resort to circumstantial evidence to prove its elements." *United States v. Toler,* 144 F.3d 1423, 1426 (11th Cir. 1998); *United States v. Gold*, 743 F.2d 800, 824 (11th Cir. 1984) ("The very nature of a conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.").

Under Rule 29, the evidence is viewed in the light most favorable to the Government and all reasonable inferences and credibility choices are drawn in favor of the jury's verdict. *United States v. Vernon*, 723 F.3d 1234, 1266 (11th Cir. 2013). If a reasonable jury could have found Defendant guilty beyond a reasonable doubt, the jury's verdict will stand. *United States v. McGuire*, 706 F.3d 1333, 1336 (11th Cir. 2013). I find that to be the case and therefore deny Defendant's renewed Rule 29 motion.

### Motion for New Trial

Defendant moves in the alternative for a new trial, contending that her motion to sever should have been granted and that the prosecutor made improper argument to the jury. She also maintains that the evidence was insufficient to support her convictions. Specifically, Defendant relies on the "interest of justice" basis for a new trial under Rule 33(a). The motion is without merit.

**Sufficiency of the evidence**

With respect to Defendant's contention that the evidence was insufficient, the Rule 29 and Rule 33 standards are not identical. *Butcher v. United States*, 368 F.3d 1290, 1297 n.4 (11th Cir. 2004). Unlike a motion for judgment of acquittal, in ruling on a motion for new trial, the court "may weigh the evidence and consider the credibility of the witnesses." *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). Where, unlike here, the evidence of guilt is "thin and marked by 'uncertainties and discrepancies,'" "there is room for a district court to reweigh the evidence and re-evaluate the credibility of witnesses." *Id.* (Citation omitted). To set aside a jury's verdict, however, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* "[S]uch a case will be rare," however. *Id.*

The evidence did not preponderate heavily against the verdict. Accordingly, Defendant's motion for a new trial will be denied. *United States v. Cox*, 995 F.2d 1041, 1044 (11th Cir. 1993). Even under the Rule 33 standard, I find the evidence sufficient to support the jury's verdict. And I find that Defendant's substantial rights were not jeopardized by errors at trial or that a miscarriage of justice has occurred.

**Severance**

Generally, defendants indicted together are tried together. *Zafiro v. United States*, 506 U.S. 534, 537-38 (1993). And this is "particularly true in conspiracy cases." *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007). To obtain a new trial, Defendant must therefore demonstrate (1) the joint trial prejudiced her, and (2) severance is the proper remedy for that prejudice. *Id.* at 1269. Only two circumstances warrant severance, a serious risk that a joint trial would compromise a specific trial right or would prevent the jury from making a reliable determination of guilt or innocence. *Id.*

"To reverse a conviction because of an improper denial of a severance, a defendant must carry the 'heavy burden' of demonstrating that he 'suffered compelling prejudice' and received an unfair trial." *United States v. Kennard*, 472 F.3d 851, 858-59 (11th Cir. 2006); *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985) ("Severance will be granted only when the defendant can demonstrate that a joint trial will result in 'specific and compelling prejudice' to the conduct of his defense."). Compelling prejudice means that "the jury is unable to separately appraise the evidence as to each defendant and render a fair and impartial verdict." *United States v. Liss*, 265 F.3d 1220, 1228 (11th Cir. 2001). It is not enough that Defendant complains only that acquittal may have been more likely if she was tried separately, "since some degree of prejudice is inherent in a joint trial," or that "much of the evidence at trial [was] applicable only to [her] codefendant[]." *Alvarez*, 755 F.2d at 857. A new trial is appropriate only where "the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction." *Id.*, quoting *United States v. Phillips*, 664 F.2d 971, 1017 (5th Cir. Unit B 1981), *cert. denied*, 457 U.S. 1136 (1982).

Defendant offers no specific, compelling prejudice resulting from her joint trial with her husband. As the Government points out, her defense "specifically targeted and countered any risk that the jury might loop her in with the evidence offered for Counts Two through Four." And this theory is repeated in Defendant's motion, as she acknowledges that "the testimony was clear that Kim Feldman was not involved in the treatment or the prescribing of the medications, that she had no medical background or training that would allow her to make a determination as to what the appropriate course of professional practice was . . ." (Dkt. 296, p. 4).

Great care was taken to impress upon the jury that Kim Feldman was not charged in Counts Two, Three and Four, the counts alleging the deaths of three of Dr. Feldman's patients. At the beginning of the trial and in the final jury instructions, the jury was so instructed. The final jury

6

instructions included this: "Counts Two, Three, and Four of the indictment charge that death resulted

from the use of the controlled substances *Dr. Feldman* distributed, dispensed, or caused to be

distributed or dispensed." (Dkt. 276, p. 20) (emphasis added). And the final jury instructions

stressed, consistent with the Eleventh Circuit's pattern instructions, that each count and the evidence

pertaining to it was to be considered separately and each Defendant was to be considered separately

and independently:

> A separate crime or offense is charged against one or more of the Defendants in each
> count of the indictment. Each charge, and the evidence pertaining to it, should be
> considered separately. Also, the case of each Defendant should be considered
> separately and individually. The fact that you may find any one or more of the
> Defendants guilty or not guilty of any of the offenses charged should not affect your
> verdict as to any other offense or any other Defendant. I caution you, members of the
> Jury, that you are here to determine from the evidence in this case whether each
> Defendant is guilty or not guilty. Each Defendant is on trial only for the specific
> offense alleged in the indictment.

(Dkt. 276, p. 31).

In sum, Defendant makes no showing that the jury was unable to separately appraise the

evidence as to her and her husband or that she suffered specific and compelling prejudice as a result

of being tried with her husband.

**Improper closing argument**

Finally, Defendant contends that the prosecutor made an improper final argument concerning

whether Defendant disclosed on her personal tax return that she had a foreign bank account. I agree.[2]

The Government is certainly free to comment on the evidence, including the facts and any reasonable

inferences from the facts. *Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) ("It has long been

held that a prosecutor may argue both facts in evidence and reasonable inferences from those facts."),

---

[2] The first trial in this case was mistried because of an inartful and improper question posed to Edward Feldman during his cross examination by the Government. Once again, the prosecutor's conduct is the focus of the court.

7

citing *Alvarez v. Estelle*, 531 F.2d 1319, 1323 (5th Cir.1976), *cert. denied*, 429 U.S. 1044 (1977). However, the challenged argument cannot be fairly characterized as a comment on the evidence or on reasonable inferences drawn from the evidence.

The argument Defendant challenges concerned the cross examination of Defendant's expert witness, Steven Oscher, and whether Defendant had disclosed her foreign bank accounts in her tax returns:

> Ms. Hale: In addition to that, I asked Mr. Oscher if in his review of the Feldmans' records if he had any indication that Kim Feldman had, as required by the law, disclosed to the federal government that she had bank accounts outside of the country.
>
> Mr. Taylor: Objection, Your Honor, this is not relevant to any of the matters that brought up.
>
> The Court: Overruled.[3]
>
> Ms. Hale: I asked him that and he said he didn't know. He didn't see anything. *That's also a requirement, a reporting requirement.*

(emphasis added).

For reasons somewhat different than those advanced by the Government during trial in defense of its argument, the Government now contends that it merely "highlighted Mr. Oscher's lack of knowledge or recollection as to whether Mrs. Feldman satisfied the foreign bank reporting requirement." (Dkt. 304, p. 7).[4] That contention is simply disingenuous, as evidenced by the remark: "That's *also* a requirement, a reporting requirement." (emphasis added).

---

[3] The relevance objection was overruled because the prosecutor had asked Oscher these questions.

[4] The Government offered an entirely different justification for its closing argument at trial. After Defendant's objection based on relevance was had been overruled, the prosecutor attempted to justify her questioning based on the allegation in the Count Five of the indictment that the Defendants were charged with money laundering and that "one of the objects of the conspiracy is avoiding a reporting requirement." This contention was properly rejected, since the Government's theory had, all along, and in the first trial, been that the reporting requirements charged in the indictment were the CTR violations. Indeed, the very paragraph of Count Five cited by the prosecutor expressly alleges a "transaction reporting requirement ."

This last remark injected a new allegation into the trial that Defendant had violated an unidentified foreign bank reporting requirement. The Government's contention that the reporting form "is a standard form present in every U.S. citizen's 1040 tax forms . . . it is only filed if and when an individual has a foreign bank account" may be true, but misses the mark entirely. Kim Feldman was not charged in the indictment with failing to report her foreign bank account. Moreover, there was no evidence that she failed to report her foreign bank account, since Oscher did not know whether she had or not.

Nor was Oscher's cross examination directed at a matter which affected his credibility, as the Government now contends. (Dkt. 304, p. 8). At the same time, Defendant overstates the Government's closing argument. The prosecutor did not, as Defendant urges, argue that "there was evidence Kim Feldman did not file this document and that Kim Feldman was guilty based on that alone." (Dkt. 296, p. 4-5). Rhetoric aside, I cannot conclude that Defendant's substantial rights were prejudiced, notwithstanding that the argument was improper.

Mr. Oscher is a forensic accountant and certified fraud examiner with extensive fraud detection and audit experience. On direct examination, he explained that he was asked to review the Feldmans' individual and business tax returns. On direct examination, he was asked about whether he found any evidence of structuring of deposits to avoid cash transaction reporting requirements ("CTRs") or that Defendants had concealed funds from the operation of the clinic. It is true, as the Government argues, that Oscher responded that he found no evidence to indicate any *improprieties* when he reviewed Defendant's financial records, including her tax returns. If, as the Government unconvincingly argues, it only intended to attack Oscher's credibility, it failed to establish that there was any impropriety in Defendant's financial records and tax returns.

In the end, the question is whether, considering the context of the entire trial, and any curative instructions, Defendant's substantial rights were prejudicially affected by the prosecutor's improper comments. *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997). "To establish prosecutorial misconduct: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant. A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. When the record contains sufficient independent evidence of guilt, any error is harmless." *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009).

On the one hand, the prosecutor's recalling for the jury her questioning of Mr. Oscher was proper, since she had, without objection, asked him about the foreign bank account reporting requirement. *Tucker v. Kemp*, 762 F.2d at1506. But she went too far in suggesting to the jury, following Defendant's objection, that Oscher said "[h]e didn't see anything" and "*[t]hat's also a requirement, a reporting requirement.*" Essentially, this comment purported to inject into the case a reporting requirement which was not charged in the indictment and for which there was no evidentiary support. And it improperly insinuated that Kim Feldman violated a different federal disclosure law than charged in the indictment. A prosecutor must refrain from making "improper suggestions, insinuations and assertions calculated to mislead the jury." *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985).

An argument by a prosecutor will justify reversal if the fairness of the trial was undermined and the argument contributed to a miscarriage of justice. *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990). Four factors are considered in determining whether a prosecutor's conduct had a reasonable probability of changing the outcome of a trial: (1) the degree to which the challenged

remark had a tendency to mislead the jury and prejudice the accused; (2) whether the remark was isolated; (3) whether it was deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused. *Lopez*, 590 F.3d at 1256, *citing Davis v. Zant*, 36 F.3d 1538, 1546 (11th Cir. 1994).

Considering the context of her entire closing argument, the prosecutor's comment was isolated and although deliberate, there was little tendency to mislead the jury or prejudice Defendant. The jury was expressly instructed that Defendant "is on trial only for the specific offense charged in the indictment." (Dkt. 276, p. 31). And since a prosecutor's argument is not evidence, the improper argument could be rectified by an instruction that only the evidence in the case can be considered. *Smith*, 918 F.2d at 1562. Here, although Defendant did not request such an instruction at the time of the improper comment, the jury was instructed at the conclusion of the case that "anything the lawyers say is not evidence in the case." (Dkt. 276, p. 5).[5] There is no reason to conclude that the jury did not heed this instruction.

Although I find that the prosecutor's reference to an uncharged reporting requirement was improper, I conclude that Defendant was not prejudiced to the extent that the outcome of the trial would have been different. The complained of remark would have had no impact on the jury with respect to Count One. And the evidence supporting Counts Five through Eight was substantial. Specifically, the evidence of structuring cash deposits to avoid the CTR requirements was overwhelming. And it was largely undisputed that Defendant caused substantial sums to be deposited into bank accounts in Canada, as alleged in Count Five, ¶ 3(f) of the indictment.

Finally, to the extent Defendant adopts the arguments made by Edward Feldman in his

---

[5] The Government does not contend that Defendant failed to object to the closing argument.

motion, those arguments are rejected for the reasons discussed in the Order denying Edward

Feldman's renewed Rule 29 motion and alternative motion for new trial.

    **DONE AND ORDERED** this *19th* day of May, 2016.


                            **JAMES D. WHITTEMORE**
                            **United States District Judge**

Copies to: Counsel of Record